UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANNON KANDA,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF COEUR D'ALENE POLICE CHIEF WAYNE LONGO, CITY OF COEUR D'ALENE, COEUR D'ALENE POLICE DEPARTMENT, OFFICER GREGORY MOORE, OFFICER JONATHAN CONTRELLE, JOHN DOES 1-10 AND JANE DOES 1-10,<br><br>        Defendants. | Case No. 2:09-CV-00404-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants City of Coeur d'Alene Police Chief Wayne Longo, City of Coeur d'Alene, Officer Gregory Moore and Officer Jonathan Cantrell's Motion for Summary Judgment. (Collectively referred to as "Defendants") (Mot. for Summ. J., Dkt. 24.) The motion is made pursuant to Federal Rule of Civil Procedure 56. The matter is ripe for the Court's consideration. Having fully

reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this action alleges violations of 42 U.S.C. § 1983 in connection with the arrest of Shannon Kanda ("Kanda") by the Defendants. It is uncontested that on May 7, 2009, Kanda was in an altercation with her apartment complex neighbors that resulted in her being physically beaten by unknown assailants. (Pl.'s Separate Statement of Undisputed Material Facts In Opp. to Def's Mot. for Summ. J. at 1, Dkt. 29.) Kanda had been drinking throughout the evening and was intoxicated at the time of the incident. (Statement of Undisputed Material Facts at 2, Dkt. 24.) Following the incident Kanda went upstairs to the apartment of Jeffrey Marfice ("Marfice") and Cody Mee ("Mee") in order to call the police for assistance. (Pl's Separate Statement at 2.) The Defendant Officers arrived at the apartment at approximately 11:20pm. *Id.*

The Defendant Officers attempted to question Kanda about the incident but due to her inebriation she was upset and uncooperative. *Id.* at 3. The Defendant Officers asked Kanda to step outside of Marfice and Mee's apartment to the location where she had been assaulted. *Id.* Kanda was uncomfortable with returning to the location but generally complied. *Id.* Kanda attempted to open the apartment door but was unable to do so. *Id.*

Officer Cantrell attempted to assist Kanda with the door, but she pushed his hand away. *Id.* at 4. In response to this contact, Officer Moore told Kanda "Hey, you don't hit the police." *Id.* Almost immediately after Kanda was taken outside by Officer Moore she attempted to strike him with her hand. *Id.* Officer Moore deflected the strike responded with a brachial stun which was unsuccessful and instead struck Kanda in the chin. *Id.* Both officers then took hold of Kanda and put her down face first on the stairwell landing. *Id.* Officer Cantrell informed Kanda that she had hit her head on the iron stairwell handrail in the process. *Id.* at 5. As a result of this takedown, Kanda suffered serious injuries to her left eye and required surgery to replace broken ocular bones the next day. *Id.* at 6.

Once Kanda had been taken to the ground she was handcuffed and arrested for battery on a police officer. *Id.* The Defendant Officers called an ambulance for Kanda but it refused to take her because she was acting violently. (Statement of Undisputed Material Facts at 3.) Kanda was taken to Kootenai Medical Center in the back of the Defendant Officer's police car. *Id.* Specifically, Kanda has no recollection of any events that happened between leaving Marfice and Mee's apartment and being placed in the police car. (Deposition of Shannon Kanda at 13, Dkt. 28-4 Ex. E.) Kanda has no recollection of any altercation between herself and the Defendant Officers. *Id.* Kanda spent two days in the Kootenai Medical Center and was released after that time. (Pl.'s Separate Statement at 7.) As a result of the incident Kanda continues to have medical problems with her eye. *Id.*

On May 8, 2009, the Idaho State Police ("ISP") began a criminal investigation into the use of force by the Defendant Officers. *Id.* No adverse action has been taken against the Defendant Officers and no action in the investigation is recorded after June 11, 2009. *Id.* at 9. On January 4, 2010, the City of Coeur d'Alene filed a criminal complaint against Kanda charging Battery on Law Enforcement Officers pursuant to Idaho Code § 18-915 and § 18-903. *Id.* at 10. On February 25, 2010, Kanda plead guilty to a charge of Battery pursuant to Idaho Code § 18-913. (Def.'s Mot. for Summ. J., Dkt. 24 Ex. B.)

On August 21, 2009, Kanda filed her Complaint and Demand for a Jury Trial in the United States District Court for the District of Idaho. (Dkt. 1.) Kanda alleges four counts:

> Count I: 42 U.S.C. § 1983 Action for Deprivation of Civil Rights, which alleges that the force used to arrest Kanda was excessive.

> Count II: 42 U.S.C. § 1985 Action for Conspiracy to Interfere with Civil Rights, which alleges that there was a conspiracy among the Defendants to deprive Kanda of her constitutional rights.

> (There is no Count III)

> Count IV: 42 U.S.C. § 1983 Failure to Adequately Train & Supervise Police Officers, which alleges that the City of Coeur d'Alene is liable for the actions of its officers.

> Count V: 42 U.S.C. § 1983 Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action, which alleges the same as Count IV.

On March 15, 2010, the Defendants filed a Motion for Summary Judgment on all counts.

## STANDARD OF LAW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[1]

---

[1] *See also,* Rule 56(3) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir.

1992).

## DISCUSSION

**1. Count I 42 U.S.C. § 1983 Claims**

Congress has created a cause of action against private individuals who, while

acting under color of law, violate the constitutional rights of private citizens. 42 U.S.C. §

1983 provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivations of any rights, privileges or immunities
> secured by the Constitution and laws, shall be liable to the party injured.

*Id.* In order for a plaintiff to prevail on a § 1983 claim they must show that (1) the actor

that deprived them of their rights acted under color of law and (2) that the action actually

deprived them of a constitutional right. In this case (1) is not disputed by either of the

parties. Police officers carrying out their duties act under color of law. Kanda contends

that the constitutional rights which were violated in this case was her right to be free from

excessive force incident to arrest.

While § 1983 provides a cause of action against police officers for constitutional

violations that they might have committed, they are also entitled to qualified immunity

from § 1983 claims. Qualified immunity operates to "shield an officer from personal

liability when an officer reasonably believes that his or her conduct complies with law."

*Pearson v. Callahan*, 129 S.Ct. 808 (2009). The court in *Pearson* rejected the mandatory

two-step approach that it had announced in *Saucier v. Katz*, 533 U.S. 194 (2001). *Id.* at 818. That approach had required courts to first decide if the defendant's "conduct violated a constitutional right" then decide whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Courts are now free to decide either question in whatever order is most appropriate given the circumstances. Whether the Defendant Officers are entitled to qualified immunity is an appropriate question for summary judgment since the doctrine, if applicable, confers immunity from the suit itself. *Pearson*, 129 S.Ct. at 815 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).).

### A. Excessive Force

The appropriate area of inquiry for a claim of excessive force incident to an arrest is the reasonableness test of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has directed the excessive force inquiry into "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. When weighing an excessive force claim, summary judgment is appropriate if the Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Alternatively, "the court may make a determination as to reasonableness where, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the officers'] use of force was reasonable."

*Hopkins v. Andaya*, 958 F.3d 881, 885 (9th Cir. 1992). The Court can therefore find summary judgment if the force the officers used was appropriate in any circumstance, or if the circumstances in the specific case were such that the only conclusion is that the force was reasonable.

While considering this question the Court must be cognizant that "all determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Henrich*, 39 F.3d at 914 (quoting *Graham*, 490 U.S. at 396-97) (internal quotations omitted). In addition, a plaintiff can succeed on an excessive force claim only if they have suffered some compensable injury as a result of their treatment. *Graham* 490 U.S. at 394.

The *Graham* standard requires the Court to evaluate "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others…[, and] (3) whether [she] [was] actively resisting arrest at the time of the arrest." *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001) (quoting *Chew v. Gates*, 27 F.3d 1432, 1440-41 (9th Cir. 1994)) (referring to the three step approach in *Graham*). Ultimately, the Court must weigh the interests of the government in enforcing the law and providing for the safety of police officers and bystanders against the individual's right to be free from intrusive and excessive force. *Graham*, 490 U.S. at 396. The Ninth Circuit cautions that because "such balancing nearly always requires a jury to

sift through disputed factual contentions, and to draw inferences therefrom […] summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citations omitted).

In the present case, Kanda contends that the Defendant Officers used excessive force when they executed a takedown on her that left her prone on the ground with a wound to her eye. There is some dispute in the record as to how Kanda received the injury to her eye, given that she was in a fight before the Defendant Officers arrived, but for the purposes of summary judgment the Court will view the facts in the light most favorable to the Plaintiff and assume that Kanda's eye was injured during the takedown. This case is complicated by the circumstances surrounding Kanda's injury. The Defendant Officers contend that Kanda struck her head against the iron railing in the course of a routine takedown, indicating that the injury to her eye was un-intentional. (Aff. in Opp. at 5, Dkt. 28 Ex. A.) Kanda contends that her head striking the iron railing was intentional. (Pl.'s Separate Statement at 10.) However, Kanda has failed to allege any facts which support this assertion. Kanda herself has no recollection of the takedown. (Deposition of Shannon Kanda at 13.) The Supreme Court in *Celotex* reiterated that while the nonmoving party need not produce evidence that would be admissible at trial to oppose a summary judgment motion, they must make some showing of evidence above the bare assertions of the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Kanda has failed to show this evidence. There are no witnesses, no statements, nothing beyond the assertions in the pleadings and motions that claim that the actions of the

Defendant Officers was intentional. If Kanda herself had any recollection of the events then the Court would be bound to accept it as true for the purpose of summary judgment, but there is simply is no other version of events in the record except that of the Defendant Officers.

Even if Kanda has no version of events with which to refute the assertions of the Defendant Officers, however, that does not mean that summary judgment is appropriate. In their motions the Defendants only examine whether the initiation of the takedown, not how it was carried out, constituted excessive force. The *Graham* standard requires the Court to evaluate the actual force used to determine if it was objectively reasonable. The Supreme Court has held that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The actual force that was used in arresting Kanda is the force that must be considered, regardless of the intentions of the Defendant Officers when they initiated the takedown. *Parker v. Town of Swansea*, 310 F.Supp.2d 356, 367 (D. Mass. 2009) ("[T]he proper inquiry under the Fourth Amendment is not 'whether the police officer intended to brutalize a suspect or merely intended to discipline him,' rather, the question is whether the officer intended to perform the underlying violent act at all.") (quoting *Glasco v. Ballard*, 768 F.Supp. 176, 179 (E.D. Va. 1991). Therefore, for the purposes of this motion the Court will assume that the force used was Kanda striking her

head against the iron railing, not a hypothetical takedown, but that this level of force was unintentional.

**(1)** *Quantum of Force*

The Court must "first assess the quantum of force used to arrest [the plaintiff] by considering the 'type and amount of force inflicted.'" *Deorle*, 272 F.3d at 127 (quoting *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1198 (9th Cir. 2000)). Kanda argues that the force used against her was of the highest level, deadly force. In reaching this conclusion Kanda misstates the rule regarding deadly force, arguing that "the actual infliction of 'serious bodily injury' is now defined as 'Deadly Force'" (Pl.'s Brief in Opp. to Def.'s Mot. for Summ. J. at 8, Dkt. 32.) It is true that the Ninth Circuit expanded what could be considered as deadly force in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005). There the Ninth Circuit found that deadly force is determined by evaluating "whether the force employed 'creates a substantial risk of causing death or serious bodily injury.'" *Id.* at 706. Just because serious bodily injury resulted from the force employed is not dispositive that deadly force was used. Rather the Ninth Circuit directs the Court to evaluate what the likelihood of serious bodily injury would be given a particular use of force. While there is a risk of bodily injury that would result from a person hitting their head against an iron railing as part of a takedown, the Court is not convinced that this level of force rises to the most serious level of force that a police officer could employ.

Kanda's other characterizations of the force used in this case are similarly unpersuasive. Kanda argues that the force used against her was "indistinguishable from the violent force used against" the plaintiff in *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007). (Pl.'s Brief in Opp. at 7.) In that case the plaintiff, already in handcuffs and merely refusing to consent to a search of his person, was slammed headfirst twice into a wall with sufficient force to break his neck and pinned against the floor where the police officer rolled him onto his back and punched him in the face. *Davis*, 478 F.3d at 1052. This extreme example of excessive force bears little to no resemblance to the takedown at issue in this case. Kanda also tries to draw a comparison with the plaintiff in *Deorle*, 272 F.3d because both of them suffered debilitating eye injuries. (Pl.'s Brief in Opp. at 9.) In that case, the plaintiff's eye injury was caused when a lead filled beanbag fired from a police shotgun at lethal distance hit him in the face. *Deorle*, 272 F.3d, 1277-78. There is no relation to that kind of force in the present case.

The force used against Kanda is more appropriately described as intermediate force. The Coeur d'Alene Police Department classifies the use of 'Hand' techniques as just one step above verbal actions on its force continuum, with impact weapons resting between K-9 and specialty munitions. (Def.'s Mot. for Summ. J. at Ex. D.) The Ninth Circuit has confirmed that this is the appropriate characterization. In *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010), the court found that summary judgment for the defendants was appropriate. In that cause the plaintiff was stopped for speeding and when she refused to sign a notice of infraction she was tased four times and a pain hold was

applied before she was pulled out of the car. *Id.* at 1020-21. The court held that use of a taser is a Level 1 tactic "akin to 'pain compliance applied through the use of distraction, counter-joint holds, hair control holds, [and pepper spray]' and used to control passively or actively resisting suspects." *Id.* at 1026 (alterations in original). The Ninth Circuit found that such techniques "involve a 'less significant' intrusion upon an individual's personal security than most claims of force, even when they cause pain and injury." *Id.* at 1027-28. Similarly, in *Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) police used a variety of pain compliance techniques to move anti-abortion protesters. *Id.* at 805. Even though the use of these techniques resulted in a broken wrist and a pinched nerve, the Ninth Circuit held that "the force consisted only of physical pressure administered on the demonstrators' limbs in increasing degrees, resulting in pain." *Id*. at 807. While the force used in this case is not as minimal as that used in *Brooks*, it does not rise to the levels of force used in *Davis* or *Deorle*. Though the force used was intermediate it still must be assessed under the "objectively reasonable" standard of the *Graham* factors to determine if it was appropriate given the totality circumstances.

### (2) *Severity of the Crime*

The crime at issue in this case is Battery Upon a Police Officer. It is undisputed that Kanda struck Officer Moore. Kanda contends that this crime is not sufficient to warrant the force that was used against her. In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), the crime at issue was obstructing a police officer in performance of his duties. *Id.* at 698. The plaintiff in that case had refused to remove his hands from his

pockets and was shot with pepper spray, thrown to the ground and while on the ground attacked by a dog three times and pepper sprayed four more times. *Id.* at 693-94. The Ninth Circuit there found that under police guidelines the force that was employed against the plaintiff was the highest possible short of deadly force and could not be justified by the minor infraction. *Id.* at 701-2. In *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), a mentally ill man suffered permanent brain damage when police took him to the ground and put their knees on top of him, causing him to asphyxiate. *Id.* at 1055. Though he had not committed any crime the Ninth Circuit concluded that "some force was surely justified in restraining [the plaintiff] so that he could not injure himself or the arresting officers." *Id.* at 1059. What was challenged in the case was not the takedown or the handcuffing, but the officers putting their weight on top of the plaintiff. *Id.* at 1057. The force used by the Defendant Officers in this case is less than that used in *Smith* but more than in *Drummond*. The crime that was committed, however, is more substantial than in either of those cases. This factor weighs in favor of the Defendant Officers as the officers were entitled to prevent Kanda from injuring them.

### (3) *Immediate Threat*

"[W]hether the suspect poses an immediate threat to the safety of officers or others" is the most important *Graham* factor. *Smith*, 394 F.3d at 702 (citing *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). It is also the case that "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective facts to justify such a concern." *Deorle*, 272 F.3d at 1281. In the cases discussed

so far, the threat posed by the plaintiffs to the officers has been minimal. In *Smith*, the defendant, though he had his hands in his pockets, was already known not to be armed. *Smith*, 394 F.3d at 693-94. In *Davis*, the plaintiff was handcuffed and surrounded by hotel security officers when he was beaten. *Davis*, 478 F.3d at 1051. In *Deorle*, the plaintiff was unarmed and thirty feet from the officer and had not been given a warning. *Deorle*, 272 F.3d at 1277-78. In *Brooks*, the police were confronted with a pregnant woman insider her vehicle. *Brooks*, 599 F.3d at 1020-21. Nevertheless, in *Brooks*, the Ninth Circuit found that the defendant posed some threat "by virtue of her continued non-compliance which weighs against finding the less-than-intermediate force excessive." *Id*. at 1029.

In contrast, Kanda posed a greater threat to the Defendant Officers than any of the defendants previously discussed. She had already struck one of the officers. At the time of the incident she was not a woman of average height and weighing over two hundred pounds. (Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 3, Dkt. 33.) The location where the incident took place was also cramped and presented danger. These circumstances are mitigated, however, by the presence of two trained police officers. That Kanda was drunk indicates that she was more upset and less likely to respond to verbal commands, but as her fumbling with the knob to the apartment door shows, it also indicates that she was not in full control of her physical faculties. Given these circumstances, it is clear that Kanda posed a greater threat than the plaintiff in *Brooks*, but the force used against her was also greater than that used against the *Brooks* plaintiff.

Considering all the circumstances it is difficult to understand how striking Kanda's head against the iron railing (even if accidental) is force proportionate to the threat that she posed to the Defendant Officers. While the Court recognizes that she was a greater threat than a mere non-compliant plaintiff, this factor still weighs in her favor given the disproportionate force used.

**(4)** *Resisting Arrest*

The third *Graham* factor necessarily overlaps with the second given the facts of this case. It is clear that Kanda was resisting the Defendant Officers when she attempted to strike Officer Moore. Even though she was not formally under arrest at that point this factor weighs in favor of the Defendant Officers.

**(5)** *Totality of the Circumstances*

Because the touchstone of the Fourth Amendment is reasonableness and there is no mechanical test that will capture all of the relevant factors to determine whether a given use of force is excessive. Courts are invited to consider the totality of the circumstances which can include such factors as alternative levels of force, warnings, the existence of probable cause or the conformity of the defendant officers' actions with department guidelines. *Brooks*, 599 F.3d at 1030. Whether alternative levels of force were available is particularly salient. While police officers "are not required to use the least intrusive degree of force possible" when carrying out an arrest it is still appropriate to consider what their options were. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994). Kanda argues that the Defendant Officers could have handcuffed her standing up. (Pl.'s

Brief at 6.) This surely overstates the duty that police officers have to use the level of force most appropriate to the situation. However, it is clear that striking Kanda's head against an iron railing was excessive given the alternatives that the Defendant Officers had.

Even a normal takedown that did not involve striking anything other than the ground would have achieved the exact same effect and have been less intrusive. Having weighed the *Graham* factors, that a reasonable jury could find that the force used against Kanda was excessive. While the crime was serious, the existence of other alternatives and the disproportionate nature of the force given the threat that Kanda posed could lead a reasonable jury to find for Kanda.

### *(B) Qualified Immunity*

Once a court has determined that a constitutional violation exists, it still must evaluate whether the actions of the Defendant Officers would be clearly unlawful if they had been carried out by an reasonable officer. *Pearson v. Callahan*, 129 S.Ct. 808, 823 (2009) ("The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with law."). Under normal circumstances the "objectively reasonable" test in excessive force cases is sufficient to determine whether a reasonable officer would have used the same level of force, which was recognized by the Ninth Circuit when it held that the question of qualified immunity "in excessive force cases is the same as the test on the merits." *Lalonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (citing *Katz v. United*

*States*, 194 F.3d 962, 968 (9th Cir. 1999)). In this case, however, the Court is confronted with a situation where the level of force used was not the level of force that was intended. While intent has no place in the "objectively reasonable" standard of the *Graham* test, it does factor into whether the Defendant Officers are entitled to qualified immunity.

The Ninth Circuit and other circuits have recently addressed the use of a mistaken level of force in the context of cases where police officers mistakenly pull their firearms instead of their tasers. "The Fourth Circuit recognized that it was faced with an atypical case because the claim was based on the fact that the defendant shot the plaintiff with a Glock, but this was not the level of force that the defendant intended to use." *Torres v. City of Madera*, 655 F.Supp.2d 1109, 1121 (E.D. Cal. 2009) (citing *Henry v. Purnell*, 501 F.3d 374 (4th Cir. 2007)). In order to prevent an outcome that it believed to be unjust under the *Graham* factors, the Ninth Circuit created a new test for reasonableness to address honest mistakes. *Id.* at 1120. It is not clear whether the Ninth Circuit intended this test to be specific to handgun/taser cases, but given handgun specific language in one of the prongs of the test the Court is reluctant to apply it as part of a Fourth Amendment reasonableness analysis. The Court does find that *Torres*' discussion of mistakes with regards to qualified immunity is appropriate for the present case.

While the *Graham* standard demands an objective analysis without respect to the underlying intentions of the officers, for the purposes of qualified immunity a "reasonable officer could conclude that mistaken uses of force on seized individuals do not violate the Fourth Amendment." *Id.* at 1127. (citing *Dodd v. City of Norwich*, 827 F.2d 1 (2nd Cir.

1987); *Owl v. Robertson*, 79 F.Supp.2d 1104 (D. Neb. 2000); *Troublefield v. City of Harrisburg, Bureau of Police*, 789 F.Sup. 160 (M.D. Pa. 1992)). Just as the defendant officer in *Torres* was entitled to qualified immunity for mistakenly drawing her firearm instead of her taser, a use of force far greater than intended, the Defendant Officers in this case should be entitled to qualified immunity for the unintentional escalation of force inflicted on Kanda. The court in *Torres* went so far as to claim that a "reasonable officer could have concluded that even unreasonable mistakes do not violate the Fourth Amendment because looking that [sic] the reasonableness of a mistake is more akin to negligence law than a constitutional violation." *Id.* at 1127. The Court agrees the amount of unintentional force allowed incident to routine and acceptable applications of force does bear a significant resemblance to negligence concepts like proximate cause. However, the Court need not explore this distinction at this time. It is sufficient for the present case that even a reasonable officer in the position of the Defendant Officers would have believed that the force that they used, an unintentional level of force above that of a normal takedown, was lawful. Therefore, the Defendant Officers are entitled to qualified immunity for the unintentional striking of Kanda's head against a nearby railing when taking her down for battery on an officer.

## II. Count II: 42 U.S.C. § 1985 Conspiracy Claims

Even if no violation of a plaintiff's constitutional rights can be shown Congress has created a cause of action to punish conspiracies to deprive those rights. The statute provides that there shall be liability where two or more persons conspire "for the purpose

of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985 (3). There are multiple sections of § 1985 and Kanda fails to specify which section her claim falls under. Subsection (3) is the most likely, however, since subsection (1) is designed to allow government officers to perform their duties and subsection (2) is designed to protect parties, witnesses and jurors from intimidation. Neither is at issue in this case. The Supreme Court has interpreted § 1985 such that "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffon v. Breckenridge*, 403 U.S. 88, 102 (1971). In their motion for summary judgment Defendants point out that Kanda is not a member of a protected class for the purposes of equal protection. Kanda does not allege that any action was taken against her because of her gender or other class based protections. Indeed, Kanda does not defend her § 1985 claim in her summary judgment memoranda. Accordingly, pursuant to Dist. Id. Local Rule 7.1, the Court can deem the non-objection in her memorandum on this claim as consent to the granting of the motion for summary judgment on this claim.

It is sufficient that the defendants point to a lack of evidence in order to show that there is no genuine issue of material fact for trial. With no rebuttal from Kanda, the Court finds that there are no genuine material facts for trial concerning Kanda's § 1985 claim and Defendants are entitled to summary judgment as a matter of law.

### 3. Counts IV and V: Municipal Liability

Kanda seeks damages against the Chief of Police Longo and the City of Coeur d'Alene. The Supreme Court has held in *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) that "local governing bodies […] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where […] the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers." *Id.* at 690. The Court made clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original). The burden is on Kanda to show a policy or custom on the part of the City of Coeur d'Alene, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). The Defendants have appropriately pointed to a lack of such evidence.

Where there is no constitutional violation by a city's police officers, however, there can be no municipal liability. The Supreme Court has held that no principle "authorizes the award of damages against a municipal corporation when […] the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). This rule applies regardless of what the municipality's policies actually are. *Id.* ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). Though

the Court has concluded that the Defendant Officers are immune from suit based on

Kanda's constitutional claim, it is possible a jury could find that Kanda suffered some

constitutional injury. The Court must now decide if the municipality is subject to

immunity for the excessive force claim.

For the purposes of this analysis Chief of Police Longo (in his official capacity)

and the City of Coeur d'Alene will be treated as one, because both could be liable for

enforcing a policy or custom that led to constitutional violations or for failing to properly

respond to such violations including a lapse of training or deficient hiring practices.

### A. Municipal Custom or Policy

In order to hold a municipality liable Kanda must show evidence "that a

constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las

Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (citations omitted). Kanda

in this case has offered no evidence of such a policy beyond conclusory statements.

Kanda has produced no documents, statements or other records from the City of Coeur

d'Alene or its police department to allege an official policy that would have justified the

use of force against Kanda. Indeed, the only municipal policies that Kanda cites are for

the purpose of showing that the Defendant Officers acted outside of City of Coeur

d'Alene's policies. (Decl. of Larry D. Purviance in Opp. to Def.'s Mot. for Summ. J. at

Ex. F, Dkt. 28.) Lacking such evidence, Kanda can only deprive a municipality of its

immunity from suit for the torts of its employees by showing that there was a custom with

the force of policy to deprive them of their rights.

## B. Municipal Indifference

Even if, as here, a plaintiff cannot show evidence of a direct policy or a widespread custom a plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gilette* 979 F.2d at 1349 (citing *McRae v. Shimoda*, 795 F.2d 780, 84 (9th Cir. 1986).). The Ninth Circuit established the elements that a plaintiff would have to show in order to evidence a custom through deliberate indifference:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 384-91 (1989). (citations omitted). What is at issue in this case is whether the policy exists and whether it amounts to deliberate indifference. The Ninth Circuit cautioned that "whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Id.* at 1476. This does not mean, however, that summary judgment is never appropriate. The Ninth Circuit has also held that "a plaintiff cannot prove the existence of a *municipal* policy or custom solely on the occurrence of a single incident of unconstitutional action by a non-policymaking

employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (emphasis in original) (citations omitted).

In this case Kanda asserts that the City of Coeur d'Alene failed to properly investigate the incident. Kanda asserts that this failure to investigate shows deliberate indifference to unconstitutional actions on the part of the City. As evidence for this Kanda points to a media release alleged to have erroneous factual statements and an unsuccessful investigation of the incident by the ISP. (Pl.'s Separate Statement at 8-9.) A media release, however, is not evidence of a policy of indifference. A failure to investigate, however, could provide the evidence of indifference to constitutional violations such that a constructive policy on the part of the City to condone constitutional wrongdoing could be established. The Ninth Circuit in *Davis* rejected the theory that a city could be stripped of municipal immunity simply on the occurrence of a single incident. The Supreme Court, however, has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In that case a county had delegated certain decisions to the county prosecutor who ordered the action which resulted in a constitutional violation. *Id.* at 470. Like the plaintiff in *Haugen v. Brousseau*, 351 F.3d 372 (2003) Kanda has failed to show how a single failure to discipline rises to the level of ratification of the Defendant Officers' actions. *Id.* at 393 (where the City of Puyallup failed to discipline an officer who shot a fleeing suspect in the back). There is no evidence in the record that the City of Coeur d'Alene was responsible for terminating the ISP investigation against the

**MEMORANDUM DECISION AND ORDER - 25**

Defendant Officers. There is no evidence that the termination of that investigation was done by a municipal policymaker. Even if Kanda could establish that the ISP's investigation violated her constitutional rights they are not a named party to this action. Lacking this evidence the municipal defendants are entitled to immunity.

## CONCLUSION

When the Defendant Officers struck Kanda's head against an iron railing as part of a takedown a reasonable jury could have concluded that they acted with excessive force. However, given the undisputed unintentional nature of the use of force a reasonable officer in the Defendant Officers' position could have concluded that their actions were lawful. Therefore, the Defendant Officers are entitled to qualified immunity from suit. Because Kanda failed to establish that she was a member of a protected class for the purposes of equal protection or that any of the actions against her were motivated by her membership in a class there is no genuine issue of material fact for trial on her § 1985 claims. Likewise the City of Coeur d'Alene is immune from suit for the actions of its officers because Kanda has failed to establish any evidence of a policy or custom of indifference that would condone constitutional violations. For these reasons summary judgment shall be granted in Defendants' favor.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. 24) is **GRANTED** and the case is dismissed in its **ENTIRETY**.

DATED: **July 27, 2010**

Honorable Edward J. Lodge
U. S. District Judge